**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

DEMETRIC R. SMITH,

       Plaintiff,

v.                                Case No. 3:24-cv-1088-TJC-LLL

OFFICER MARTIN,

       Defendant.

---

## ORDER

**I.      Status**

Plaintiff, an inmate of the Florida penal system, is proceeding on a pro se Amended Civil Rights Complaint (Doc. 10) against an officer for a failure to protect him from an attack. Plaintiff alleges that, on August 4, 2024, two inmates attacked him near the officer's station at Columbia Correctional Institution (CCI). See Doc. 10 at 4, 7. Right after the attack, Defendant Martin approached Plaintiff, and Plaintiff showed Martin his injuries and asked to be moved to another dorm, away from his assailants. Id. Defendant Martin allegedly said, "I was told if you were not covered in blood or leaving out in a wheelchair to tell you this is a prison not a day care deal with it." Id. at 9. One of the assailants thereafter attacked Plaintiff a second time in a different area of the prison. Id. at 4, 7, 9. Plaintiff claims that, had Defendant Martin followed

proper procedures after the first attack and contacted the Officer in Charge, Plaintiff would not have been attacked a second time. Id. at 4–5.

Defendant Martin moves to dismiss the Amended Complaint (Doc. 15), arguing in part that Plaintiff failed to exhaust his administrative remedies under the Prison Litigation Reform Act (PLRA). He supports his Motion to Dismiss with declarations and grievance records (Docs. 15-1, 15-2). Plaintiff opposes the Motion (Doc. 16).

## II.   Exhaustion

The PLRA requires that a prisoner exhaust his available administrative remedies before pursuing a claim about prison conditions. See 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under [42 U.S.C. §] 1983 . . . until such administrative remedies as are available are exhausted."); see also Woodford v. Ngo, 548 U.S. 81, 92–93 (2006) (noting that a prisoner must exhaust administrative remedies before challenging the conditions of confinement, and concluding that the PLRA demands "proper exhaustion"). A prisoner need not "specially plead or demonstrate exhaustion in [his] complaint[]" because a "failure to exhaust is an affirmative defense under the PLRA[.]" Jones v. Bock, 549 U.S. 199, 216 (2007).

Exhaustion of available administrative remedies is "a precondition to an adjudication on the merits." Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008); see also Jones, 549 U.S. at 211. While "the PLRA exhaustion requirement

2

is not jurisdictional[,]" Woodford, 548 U.S. at 101, "exhaustion is mandatory …

and unexhausted claims cannot be brought," Pavao v. Sims, 679 F. App'x 819,

823 (11th Cir. 2017) (per curiam) (citing Jones, 549 U.S. at 211). Not only is

there a recognized exhaustion requirement, "the PLRA . . . requires proper

exhaustion" as set forth in applicable administrative rules and policies of the

institution. Woodford, 548 U.S. at 93. Indeed, "[p]roper exhaustion demands

compliance with an agency's deadlines and other critical procedural rules[.]" Id.

at 90.

Because failure to exhaust administrative remedies is an affirmative

defense, the defendant bears "the burden of proving that the plaintiff has failed

to exhaust his available administrative remedies." Turner v. Burnside, 541 F.3d

1077, 1082 (11th Cir. 2008). The Eleventh Circuit has articulated a two-step

process that courts must employ when examining the issue of exhaustion.

> In Turner v. Burnside we established a two-step
> process for resolving motions to dismiss prisoner
> lawsuits for failure to exhaust. 541 F.3d at 1082. First,
> district courts look to the factual allegations in the
> motion to dismiss and those in the prisoner's response
> and accept the prisoner's view of the facts as true. The
> court should dismiss if the facts as stated by the
> prisoner show a failure to exhaust. Id. Second, if
> dismissal is not warranted on the prisoner's view of the
> facts, the court makes specific findings to resolve
> disputes of fact, and should dismiss if, based on those
> findings, defendants have shown a failure to exhaust.
> Id. at 1082–83; see also id. at 1082 (explaining that
> defendants bear the burden of showing a failure to
> exhaust).

3

<u>Whatley v. Warden, Ware State Prison</u>, 802 F.3d 1205, 1209 (11th Cir. 2015).

State law "determines what steps are required to exhaust." <u>Dimanche v. Brown</u>, 783 F.3d 1204, 1207 (11th Cir. 2015); <u>see also</u> <u>Jones</u>, 549 U.S. at 218 (stating that "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion"). In Florida, an inmate must follow a three-step grievance process for exhausting his administrative remedies. As the Eleventh Circuit has described it:

> The grievance procedure applicable to Florida prisoners is set out in § 33-103 of the Florida Administrative Code. Section 33-103 contemplates a three-step sequential grievance procedure: (1) informal grievance; (2) formal grievance; and then (3) administrative appeal. <u>Dimanche</u>, 783 F.3d at 1211. Informal grievances are handled by the staff member responsible for the particular area of the problem at the institution; formal grievances are handled by the warden of the institution; and administrative appeals are handled by the Office of the Secretary of the [Florida Department of Corrections]. <u>See</u> Fla. Admin. Code. §§ 33-103.005–103.007. To exhaust these remedies, prisoners ordinarily must complete these steps in order and within the time limits set forth in § 33-103.011, and must either receive a response or wait a certain period of time before proceeding to the next step. <u>See</u> <u>id.</u> § 33-103.011(4).

<u>Pavao</u>, 679 F. App'x at 824.

Here, Defendant Martin demonstrates that Plaintiff did not properly exhaust his administrative remedies before bringing this action. According to the records Defendant Martin provides, Plaintiff submitted three informal

grievances (# 251-2408-0301, # 251-2409-0147, and # 251-2409-0148) and one formal grievance (# 2408-251-104) expressly complaining about Defendant Martin's alleged failure to protect him.[1] See Doc. 15-1 at 6, 11–12. Informal grievance # 251-2408-0301 was denied, and the other informal and formal grievances were returned without action for Plaintiff's failure to comply with the relevant administrative rules. Id. at 5, 10–12. Plaintiff filed one grievance with the Office of the Secretary (# 24-6-28307), but that grievance also was returned without action for Plaintiff's failure to first seek relief at the institution level. See Doc. Doc. 15-2 at 6–7.

Plaintiff does not dispute that the grievances Defendant Martin provides are representative of the grievances he submitted and to which he received responses. Indeed, he provided the same records with his original complaint. See Doc. 1-1. In both his Amended Complaint and his Response to Defendant's Motion to Dismiss, Plaintiff appears to concede that these grievance records show he did not properly exhaust his administrative remedies. See Doc. 10 at 11; Doc. 16 at 1–2. To overcome dismissal, Plaintiff claims he filed other

---

[1] The copy of informal grievance # 251-2408-0301 that Defendant Martin provides is impossible to read. See Doc. 15-1 at 10. Plaintiff provided a clear copy of this grievance with his original complaint. See Doc. 1-1 at 3. Plaintiff filed another formal grievance loosely related to the incident (# 2409-251-062), in which he complained about the disciplinary report he incurred that day. See Doc. 15-1 at 8. That grievance was denied. Id. at 7. Even if formal grievance # 2409-251-062 could be considered an effort by Plaintiff to exhaust his administrative remedies related to the claim he raises in this action, he did not appeal the grievance in accordance with the procedures set forth in the Florida Administrative Code. See Doc. 15-2 ¶¶ 2–4.

grievances, but he never received receipts or responses. See Doc. 10 at 11; Doc. 16 at 1.

For instance, in his Response to Defendant's Motion, Plaintiff says he submitted a formal grievance to the warden on September 20, 2024, with a copy of the September 18, 2024 "returned" informal grievance attached. See Doc. 16 at 1.[2] He further says he appealed informal grievance # 251-2408-0301 (which was denied) and formal grievance # 2408-251-104 (which was returned without action) by submitting a grievance "appeal" to the Office of the Secretary on October 7, 2024. Id. Additionally, Plaintiff says he spoke with a classification officer in November 2024 about his missing grievances and was told that they "may have gotten misplaced." Id. at 1–2. He contends he tried "everything [he] could . . . to complete the grievance process, but . . . was prevented from doing so." Id. at 2.

Liberally construing Plaintiff's allegations, he invokes the "unavailability" exception to the exhaustion requirement. Thus, the Court cannot resolve the exhaustion issue at the first step of the Turner analysis. At the second step of the Turner analysis, the Court must make factual findings. See 541 F.3d at 1082; see also Bryant, 530 F.3d at 1376 (holding district courts

---

[2] Plaintiff does not specify which informal grievance he attempted to appeal. Two were returned without action on September 18, 2024 (# 251-2409-0147 and # 251-2409-0148). See Doc. 15-1 at 11–12.

must act as factfinders when ruling on matters in abatement such as exhaustion). First, to the extent Plaintiff suggests his discussions with a classification officer relieve him of his obligation to complete the grievance procedure, he is incorrect. The Supreme Court has instructed, "Courts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement. The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" Ross v. Blake, 578 U.S. 632, 648 (2016).

The Court has identified three narrow circumstances in which an administrative remedy would be considered "unavailable": (1) when the administrative procedure "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when the procedural mechanism is "so opaque" that reasonable inmates cannot "navigate it"; or (3) when prison officials actively prevent inmates from using or accessing the grievance process through "machination, misrepresentation, or intimidation." Id. at 643–44.

Plaintiff invokes the third method for demonstrating his administrative remedies were unavailable by suggesting that he was prevented from filing grievances. But he does not allege that prison officials withheld from him administrative remedy forms or prevented him from using or accessing the grievance process through "machination, misrepresentation, or intimidation."

7

See id. On the contrary, the records show that Plaintiff had access to the necessary forms as demonstrated by the numerous grievances he submitted at CCI between August and December 2024, all of which were received, processed, and responded to. See Doc. 15-1 at 4, 9; 15-2 at 4; Doc. 16-1 at 1–4; see also generally Doc. 1-1. Even if Plaintiff submitted some grievances that were "misplaced," he alleges no conduct by a prison official that rises to the level of "machination, misrepresentation, or intimidation." See Ross, 578 U.S. at 643–44.

Even more, however, had Plaintiff submitted the grievances he claims to have submitted, he would not have properly exhausted his administrative remedies before initiating this action. To the extent Plaintiff claims to have appealed the returned grievances (informal grievance # 251-2409-0147 or # 251-2409-0148 and formal grievance # 2408-251-104), such submissions would not have sufficed because an inmate cannot appeal a returned grievance by proceeding to the next step of the grievance process. Rather, the proper mechanism for curing a deficiency noted in a returned grievance is to refile the grievance "within the applicable time frame" and "utilizing the proper procedure." See Fla. Admin. Code § 33-103.014(2). Plaintiff does not allege or demonstrate that he refiled any of the returned grievances and properly completed the three-step grievance process.

The only grievance Plaintiff conceivably could have appealed would have been the one that was denied (informal grievance # 251-2408-0301). Plaintiff claims to have appealed the denial of the informal grievance by proceeding directly to the Office of the Secretary on October 7, 2024. See Doc. 16 at 1. That action also would not have sufficed because the proper mechanism for appealing an informal grievance is to file a formal grievance with the warden. See Fla. Admin. Code §§ 33-103.005(1), 33-103.006(2)(g); see also Pavao, 679 F. App'x at 824 (explaining that the Florida Administrative Code "contemplates a three-step sequential grievance procedure" (emphasis added)).

Finally, accepting as true that Plaintiff submitted a grievance appeal to the Office of the Secretary on October 7, 2024, but received no response, he did not wait the response time before initiating this action. See Fla. Admin. Code § 33-103.011(3)(c) (providing that the Office of the Secretary has up to 30 calendar days to respond to a grievance). Plaintiff submitted his original complaint to prison officials for mailing on October 17, 2024, less than 30 days after he allegedly submitted his grievance appeal. See Doc. 1 at 17; see also Doc. 1-2 (mailing envelope). Thus, assuming Plaintiff submitted a grievance to the Office of the Secretary on October 7, 2024, he did not afford the agency "a fair and full opportunity" to address his complaints on the merits before seeking judicial intervention. See Woodford, 548 U.S. at 90; see also Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000) ("[W]hen a state provides a grievance procedure for

9

its prisoners, . . . an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure <u>before</u> pursuing a § 1983 lawsuit." (emphasis added)).

Finding Defendant carries his burden showing Plaintiff failed to exhaust his administrative remedies, the Court concludes Defendant's Motion is due to be granted and Plaintiff's claims dismissed without prejudice.[3]

Accordingly, it is

**ORDERED:**

1.      Defendant Martin's Motion to Dismiss (Doc. 15) is **GRANTED** to the extent that Plaintiff's claims are **dismissed without prejudice** for his failure to exhaust his administrative remedies under the PLRA.

2.      The **Clerk** shall enter judgment dismissing this case without prejudice, terminate any pending motions as moot, and close the case.

**DONE AND ORDERED** in Jacksonville, Florida, this 9th day of March, 2026.



TIMOTHY J. CORRIGAN
Senior United States District Judge

---

[3] Because the Court finds that this case is due to be dismissed for Plaintiff's failure to exhaust his administrative remedies, the Court need not address Defendant's other arguments.

Jax-6
c:
Demetric R. Smith
Counsel of Record

11